

```
                                            FILED
                                          OCT 2 2 2009
                                    UNITED STATES BANKRUPTCY COURT
                                    EASTERN DISTRICT OF CALIFORNIA
```

*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION**

| | |
|---|---|
| In re: ) | Case No. 09-24547-D-7 |
| ) | |
| LAURENCE R. NICHOLSON & ) | Docket Control No. TAA-2 |
| JOYCE V. NICHOLSON, ) | |
| ) | DATE:   September 30, 2009 |
| Debtors. ) | TIME:   10:00 a.m. |
| _____ ) | DEPT:   D (Courtroom 34) |

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

### MEMORANDUM DECISION

#### I. Statement of Proceeding

Trustee Thomas A. Aceituno (the "trustee") has brought an Objection to Claims of Exemption ("Trustee's Objection"). Docket No. 53. For reasons set forth below, the Trustee's Objection will be overruled.

#### II. Background

On March 16, 2009, Laurence R. Nicholson ("Nicholson") and Joyce V. Nicholson (together, the "debtors") filed a voluntary Chapter 7 petition ("Petition"). Docket No. 1. On their Schedule B, the debtors scheduled 25 shares (the "shares") in Applied Science, Inc. ("ASI"), representing a 50 percent stake in the corporation. Id. ASI manufactures blood collection devices for donation centers. Declaration of Dana Demerjian Filed in Support of Debtors' Opposition to the Trustee's Objection, filed October 8, 2009, Docket No. 94 ("Demerjian Decl."), Ex. A at 4. ASI has two

equal shareholders: Nicholson and the Clifford A. Tyner Trust (the "Tyner Trust"). Id.

The debtors assigned a $0.00 value to their interest in the shares and described the property by stating that the corporation had assets of $468,711, liabilities of $860,726 and an accumulated deficit of $419,270. Petition at 22. The debtors did not claim the shares as exempt on their Schedule C. Id. at 24.

On April 20, the trustee convened the meeting of creditors pursuant to 11 U.S.C. § 341. On May 4, the trustee concluded the meeting of creditors and the next day filed a Report of No Distribution. On June 5, Karen Tyner ("Tyner"), as representative of the estate of Clifford A. Tyner, filed a timely Objection to the Chapter 7 Trustee's Determination of No Distribution ("No Distribution Objection").[1] Docket No. 29. See Fed. R. Bankr. P. 5009. Therein, Tyner stated that she believed the shares might have material value, and asked the trustee to delay his final report pending an appraisal of the shares. No Distribution Objection at 1:26-2:3.

On July 21, the trustee filed a Notice of Withdrawal of Trustee's Report of No Distribution. Docket No. 34. Two days

---

[1] Tyner is Clifford Tyner's widow. Declaration of Karen Tyner in Support of the Trustee's Objection, filed October 8, 2009, Docket No. 85 ("Tyner Decl."), ¶ 2. It is unclear if the Tyner Trust has distributed its ASI shares to Tyner, or if Tyner is rather the beneficial owner of the Tyner Trust's ASI shares. Tyner is also chairperson of ASI's board of directors, id., and her subsequent pleadings are filed in this capacity as well. See, e.g., Joinder in Objection to Claims of Exemption and Request for Affirmative Relief, filed August 17, 2009, Docket No. 59 ("Joinder"). Tyner alleges that she is a party in interest because she holds personal and derivative claims against Nicholson for breach of fiduciary duty, id. at ¶ 2, as detailed herein.

later, the trustee filed a Notice of Assets. On July 28, the trustee filed a Motion for Sale of Assets Free and Clear of Liens ("Motion for Sale of Assets"). Docket No. 38. Therein, the trustee moved the court for an order authorizing the sale of the shares. Id. at 1:21-22. The trustee stated that he had accepted Tyner's offer to purchase the shares for $5,000, subject to overbids at the time of hearing. Id. at ¶ 6. The trustee also stated that he and Tyner had agreed that if the debtors amended their Schedule C to claim an exemption in the shares, Tyner could either increase the purchase price to cover the full amount of the claim of exemption, or cancel the sale. Id.

On July 28, the debtors amended their Schedule B to assign a $19,949 value to the shares. Docket No. 43. They also amended their Schedule C to claim the full value of the shares as exempt pursuant to California Code of Civil Procedure section 703.140(b)(5). Id. On July 31, the debtors again amended their Schedule B to assign a $0.00 value to the shares. Docket No. 44. They also amended their Schedule C to claim an additional $2,075 exemption in the shares pursuant to California Code of Civil Procedure section 703.140(b)(6).[2] Id.

---

[2] The debtors' amended filings in July violate Federal Rule of Bankruptcy Procedure 1008, in that they are not submitted under oath. The debtors' amended filing in August, which is the debtors' last word on their claimed exemption in the shares, does not suffer from the same defect. Therefore, the court need not decide whether the debtors' previous amended filings are valid notwithstanding their lack of compliance with the Federal Rules of Bankruptcy Procedure.

It should be noted that the debtors' request for judicial notice of their August 2009 amended filing, see Request for Notice Filed in Support of Debtors' Opposition to Trustee's Objection to Claims of Exemption, filed September 16, 2009, Docket No. 70, is inappropriate and unnecessary. While Federal Rule of Evidence 201 does apply to

- 3 -

On August 4, Tyner filed a Notice of Subpoena, notifying the parties in interest of her service of a subpoena on Nicholson personally and in his capacity as ASI's registered agent. Docket No. 49.

On August 12, the Trustee's Objection was filed. Therein, the trustee asks the court to disallow any claim of exemption with respect to the shares. Objection at 4:5-6. The trustee alleges that the debtors amended their Schedules in response to his sale of the shares to Tyner, id. at ¶¶ 8-9, and in order to recover value for an asset they had represented was worthless, id. at ¶ 10.

In the Joinder, filed on August 17, Tyner alleges that the debtors, hoping the trustee would abandon the shares, knowingly misrepresented their value as zero in their original Schedule B. Joinder ¶ 4. Then, in their amended schedules, Tyner alleges the debtors claimed an exemption in the shares in order to prevent the sale of the shares to her, or at least extract a payment from such sale. Id. Finally, Tyner claims, on information and belief, that Nicholson removed: (i) electronically-stored data from an ASI computer in order to put this data beyond the reach of Tyner's subpoena, id. at ¶ 6; and (ii) other assets from ASI's offices in an effort to thwart the trustee's sale of the shares to Tyner, id. at ¶ 7. Each of these actions, Tyner claims, constitutes bad faith and is grounds for disallowance of the debtors' amended exemptions. Id. at ¶ 9.

///

---

bankruptcy proceedings, see Fed. R. Bank. P. 9017, the court need not take judicial notice of documents that are already part of the record of this case in order to consider them.

- 4 -

1  Also on August 17, the debtors amended their Schedule B to
2  assign a $25,000 value to the shares. Docket No. 61. The same day,
3  the debtors amended their Schedule C, this time to disclaim the
4  previously-claimed $2,075 exemption in the shares. Id.

5  On August 19, the court issued an Order on the Motion for Sale
6  of Assets, Docket No. 66 ("Order"). The court determined that
7  Rostrevor Partners, LLC ("Rostrevor Partners"), who bid $25,949
8  during a hearing on the motion, had submitted the highest and best
9  offer for the shares.[3] Order at ¶ 1. The court authorized the
10 trustee to consummate the sale of the shares to Rostrevor Partners,
11 but ordered him to hold in escrow $19,949 pending resolution of the
12 parties' dispute over the debtors' entitlement to an exemption in
13 the shares. Id. at ¶ 3.

14 On August 20, ASI's newly-constituted board of directors
15 appointed Morgan President and Chief Executive Officer and
16 terminated Nicholson's employment. Declaration of Jonathan Morgan
17 in Support of the Trustee's Objection, filed October 8, 2009, Docket
18 No. 88 ("Morgan Decl."), Ex. A.

19 On September 16, the debtors filed a timely Opposition to the
20 Trustee's Objection ("Debtors' Opposition"). Docket No. 69.
21 Therein, the debtors insist that their assignment of a $0.00 value
22 to the shares was correct on the bankruptcy filing date. Debtors'
23 Opposition at 3:6-7. According to the debtors, ASI's prospects

---

[3] Jonathan Morgan ("Morgan") is Rostrevor Partners' Managing Member. Supplemental Declaration of Jonathan Morgan in Support of Finding of Good Faith and Waiver of Stay of Fed. R. Bankr. P. 6004(h), filed August 19, 2009, Docket No. 67, ¶ 1. Morgan has provided advice to Tyner in connection with ASI since approximately June 2009. Id. at ¶ 3.

improved only in late June, when sales increased and the firm began to develop a relationship with Pall Medical. Id. at 3:9-13. Pall Medical is a division of Pall Corporation, a large medical company. Tyner Decl. ¶ 4. By August 19, when the trustee sold the shares to Rostrevor Partners, the debtors estimate ASI had a 95 percent chance of getting $600,000 in orders from Pall Medical within a few days. Id. at 3:16-20. Given ASI's dramatic change of fortune, the debtors contend that an exemption claim of $19,949 was wholly reasonable. Id. at 3:25-28.[4]

On September 25, Tyner filed an untimely Reply in Support of Joinder ("Reply").[5] Docket No. 73. See Local Bankruptcy Rule 9014-1(f)(iii). In the Reply, Tyner renews her assertion that the debtors acted in bad faith. Reply at 2:21-23.

As evidence that the debtors knowingly misrepresented the value of ASI's shares initially, Tyner alleges that Nicholson, on behalf of ASI, offered to purchase her ASI shares for value shortly after the debtors' bankruptcy filing. Id. at ¶ 4. Tyner submits a document dated April 27, 2009, entitled "Tyner Stock Buyout Proposal." Tyner Decl., Ex. A. By this document, ASI purportedly offers to buy Tyner's shares for $250, plus four percent of ASI's total sales through March 31, 2012, to the extent new product sales total at least $25,000 per month. Id. at Ex. A, § 9.

---

[4] The debtors also deny that Nicholson stole ASI's assets or acted improperly in any other way. Id. at 4:3-13.

[5] By way of explanation, Tyner contends that she never received service of the Debtors' Opposition. Reply at 1 n.1. The court has reviewed the docket and notes that there is no proof of service of the Debtors' Opposition. The court will therefore excuse Tyner's late filing.

- 6 -

1    ASI's offer also proposes accord and satisfaction of a $252,364
2 debt purportedly owed Nicholson as a result of estimated pay
3 discrepancies between him and Clifford Tyner. Id. Finally, ASI
4 offers to make best efforts to cause Tyner to be released from
5 approximately $560,000 in personal guarantees. Id. ASI estimates
6 the total transaction value to be at least $450,000.[6] Id.
7    Tyner also submits a document entitled "Notes for ASI/Nicholson
8 Shares after Discussion with Helga White." Morgan Decl., Ex. B.
9 The document is undated, is marked "CONFIDENTIAL" in handwritten
10 script, and does not identify its author. Id. Tyner alleges that
11 Nicholson authored the document. Reply at 3:10-12.
12    In the document, Nicholson purportedly wrote that he intended
13 to "[p]lay [the bankruptcy] objection low [and] minimize the amount
14 of information provided to Tyner[]." Id. at Ex. A, § 1. Nicholson
15 also purportedly wrote that he would not "push Tyner[] to withdraw
16 [the] objection, as this may constitute [bankruptcy] fraud" and that
17 "[i]f we know that the present value of the shares is worth
18 something ... then the court may say we conspired to conceal the
19 value that the trustee should have known." Id. at Ex. A, § 2.
20 Finally, Nicholson purportedly wrote that he intended to "[o]btain
21 [a] short 1 page valuation (in the works) and submit [it] to [the]
22 [t]rustee and Tyner[,] [since] [t]oo much information may cause the
23 trustee to dig deeper and find out about the Pall discussions." Id.
24 at Ex. A, § 3.

---

[6] The document also states that "ASI is currently 'under water' in value" in the amount of $500,000-$800,000, id. at Ex. A, § 7, but notes that a distribution agreement has been proposed with Pall Medical, id. at Ex. A, § 8.

Tyner attempts to authenticate this document in three ways. First, Morgan testifies that he located the document in the files of ASI's former counsel. Morgan Decl. ¶ 9. Morgan provides additional circumstantial evidence that Nicholson authored the document, in the form of several e-mails between Nicholson and his counsel.[7] Second, Van C. Durrer, Esq., counsel to ASI and Tyner, testifies that he took custody of the files retrieved from ASI's former counsel, and that the document is a true and correct copy of what existed in the possession of such former counsel. Declaration of Van C. Durrer in Support of the Trustee's Objection, filed October 8, 2009, Docket No. 87, ¶ 4.

Third, Jamie Tyner testifies that she recognizes the handwriting on the document as Nicholson's. Declaration of Jamie Tyner in Support of the Trustee's Objection, filed October 8, 2009, Docket No. 84 ("J. Tyner Decl."), ¶ 4. Jamie Tyner testifies that she became familiar with Nicholson's handwriting by working closely with him at ASI for over five years. Id. at ¶ 2. Jamie Tyner also submits copies of several canceled ASI checks signed by Nicholson as evidence of his handwriting. Id. at Ex. A.

/ / /

---

[7] These consist of a June 25, 2009, e-mail from Nicholson to Helga A. White, Esq. ("White"), with a copy to Andrew A. Harris, Esq. ("Harris"), in which Nicholson poses several questions regarding the exemption objection, id. at Ex. D; and a July 2, 2009, e-mail in which Harris directs Nicholson to "speak with Helga and take notes" and to ask certain questions regarding the objection exemption, id. at Ex. C. Nicholson later asks Harris to "talk about what I discussed with Helga this morning." Id. at Ex. C. White is the debtors' bankruptcy attorney. Declaration of Helga A. White Filed in Support of Debtors' Opposition to Trustee's Objection, filed September 16, 2009, Docket No. 71, ¶ 1. Harris is ASI's former corporate counsel. Morgan Decl. ¶ 5.

Tyner also presents additional evidence that ASI had begun to develop a business relationship with Pall Medical by the time of the debtors' bankruptcy filing. This evidence consists of: (i) a document dated April 2, 2009, on ASI letterhead entitled "Proposed Distribution Relationship with Pall Medical," Declaration of James Bancroft in Support of the Trustee's Objection, filed October 8, 2009, Docket No. 86, Ex. A; and (ii) an e-mail from Nicholson to a Pall Medical employee dated March 4, 2009, entitled "New Idea for Applied Science Relationship," J. Tyner Decl., Ex. B. The e-mail, which Nicholson forwarded to Jamie Tyner on March 6, proposes that Pall Medical "become the ASI sales representative in Europe and for the American Red Cross." Id. at Ex. B.

Additionally, Tyner presents evidence in support of her contention that Nicholson misappropriated ASI property. This evidence consists of copies of two canceled ASI checks payable to the order of KSL Financial and signed by Nicholson. Tyner Decl., Ex. B. KSL Financial is the firm Nicholson engaged to perform a valuation analysis of ASI. Demerjian Decl. ¶ 3. One, in the amount of $1,800, is dated June 17, 2009; the other, in the amount of $800, is dated July 15, 2009. Tyner Decl., Ex. B.

Tyner also points to Nicholson's admission, in a letter to Morgan dated September 14, 2009, that he "retained a copy of the HemoFlow 400 source code in good faith as a safety backup."[8] Reply at 4:23-26; Declaration of Laurence R. Nicholson Filed in Support of Debtors' Opposition to Trustee's Objection, filed September 16, 2009, Docket No. 72, Ex. A. Tyner does not present any evidence in

---

[8] ASI has marketed the HemoFlow line of blood mixers since 1999. Demerjian Decl., Ex. A. at 4.

support of her contention that Nicholson "deliberately deleted electronic files of ASI shortly before the hearing on the motion to sell the ASI shares, in a direct effort to thwart, hinder or delay the sale." Reply at 4:26-5:3. Instead, Tyner simply makes reference to an "ongoing forensic investigation." Id.

On October 8, the debtors filed an Objection to Admissibility of Tyner's Exhibits ("Admissibility Objection"). Docket No. 90. In the Admissibility Objection, the debtors object to the admissibility of the "Notes for ASI/Nicholson Shares" document. Id. at 1:20-24. The debtors contend that Tyner has not laid a proper foundation for admission of the document. Id. at 1:25-27. The debtors also contend that the document is protected by Laurence's right to privacy and attorney-client privilege. Id. at 1:27-2:4. In support thereof, Nicholson testifies (assuming arguendo he authored the document) that he never distributed the notes to anyone. Declaration of Laurence Nicholson Filed in Support of Debtors' Opposition to Trustee's Objection, filed October 8, 2009, Docket No. 96, at ¶ 18.

Also on October 8, the debtors filed KSL Financial's valuation analysis of ASI, dated July 2, 2009. See Demerjian Decl., Ex. A. The analysis is based primarily on ASI's 2005 and 2006 federal corporate returns; 2007 and 2008 year-end profit/loss statements; and 2005, 2006 and 2007 balance sheets. Id. These documents report ASI's net loss as $72,541 in 2006; $370,146 in 2007; and $88,067 in 2008. Id. These documents also report that ASI had a negative asset value of at least $502,923 as of March 31, 2009. Id. Based on these figures, the analysis assigns a zero value to ASI as of March 31, 2009. Id.

## III. Analysis

"A voluntary petition, list, schedule or statement may be amended by the debtor as a matter of course at any time before the case is closed." Fed. R. Bankr. P. 1009(a). Amendment is liberally allowed, but may be denied on a showing that the debtor acted in bad faith.[9] In re Michael, 163 F.3d 526, 529 (9th Cir. 1998). Bad faith must be established by clear and convincing evidence. Id. The usual, but not exclusive, ground for a finding of bad faith is the debtor's attempt to hide assets. In re Arnold, 252 B.R. 778, 785 (9th Cir. BAP 2000).

The court must therefore first decide whether the debtors believed the shares had value when they represented to the trustee and the court that ASI was worthless. Neither the trustee nor Tyner contest KSL Financial's assessment of ASI's financial condition as of March 31, 2009. Instead, they argue ASI had value despite its financial condition due to Pall Medical's agreement to distribute ASI's products.

But the movants have not set forth evidence that Pall Medical agreed to do so prior to the debtors' exemption amendments in July 2009. Nicholson's communications with Pall Medical personnel in March and April 2009 constitute preliminary negotiations in anticipation of a business relationship. And a mere expectancy does not make for a valuable contractual right. Knott v. McDonald's Corp., 147 F.3d 1065, 1068 (9th Cir. 1998).

Nicholson's April 27, 2009, offer to purchase Tyner's shares

---

[9] Amendment may also be denied on a finding of prejudice to third parties. Id. Because neither the trustee nor Tyner alleges prejudice as a result of the debtors' amended exemptions, the court will not consider this ground for denial of the debtors' amendments.

reflects the speculative nature of the Pall Medical relationship. It provides for a nominal initial payment augmented by a percentage of ASI sales payable only if ASI's new sales exceed $25,000 per month.[10]

Also, the court will give little evidentiary weight to the "Notes for ASI/Nicholson Shares" document. The document (even if it does reflect Nicholson's conversation with White, his personal attorney) is not protected by the attorney-client privilege; Nicholson's decision to share the contents of the document with Harris (who represented ASI) served as a waiver of any such privilege. See Weil v. Investment/Indicators, Research and Mgmt., Inc., 647 F.2d 18, 24 (9th Cir. 1981).

However, the court finds that Tyner has not laid a sufficient foundation for admission of the document. First, the court is unmoved by Jamie Tyner's assertion that she recognizes Nicholson's handwriting on the document. A document may be authenticated by non-expert opinion on handwriting. Fed. R. Evid. 901(b)(2) (made applicable to bankruptcy cases by Fed. R. Bankr. P. 9017). But the handwritten capital print on the document is non-distinctive, and in no way similar to the cursive script on the ASI checks.

Second, Morgan's testimony that he located the document in the files of ASI's former counsel, and Van Durrer's testimony regarding the document's chain of custody, proves nothing regarding the

---

[10] It is true that Nicholson also offered accord and satisfaction of a substantial alleged debt, and to make best efforts to cause Tyner to be release from sizeable personal guarantees. The alleged debt, however, is likely unenforceable, if only because it is based on unsubstantiated estimates of Clifford Tyner's efforts on ASI's behalf. Nicholson may well have recognized that the purported debt was unenforceable. Similarly, ASI's promise to make best efforts to cause Tyner's release is of questionable monetary value.

document's authorship. Finally, the e-mails submitted by Morgan between Nicholson, White and Harris also are not "sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a).

Even if the court were to find that Nicholson authored the document, the court still would not find that the debtors acted in bad faith. At most, the document reflects Nicholson's belief that ASI had value and his desire that the trustee not learn of the Pall Medical discussions. But if Nicholson did author the document, he likely did so on or around July 3, 2009. See Morgan Decl. ¶¶ 10-11. If so, the document reveals nothing about the debtors' assessment of ASI's value on March 16, 2009, but rather is consistent with Nicholson's testimony that ASI's prospects improved in late June.

Nicholson's purported desire to conceal the Pall Medical discussions from the trustee is also an insufficient basis for a finding of bad faith. The bad-faith exception to Rule 1009(a) regulates bad-faith acts, not thoughts. Here, the debtors amended their schedules to reflect ASI's value on July 28, a scant three weeks after Nicholson allegedly authored the document.[11]

The debtors' alleged intent to prevent the trustee's sale of the shares (or extract a monetary payment from such sale) also is not grounds for finding bad faith. Claiming an exemption late is not by itself bad faith; there must be some additional indicium thereof. Arnold, 252 B.R. at 786. In this case, once the debtors

/ / /

---

[11] The court also questions whether the debtors in July 2009 had a duty to disclose ASI's as-yet unconsummated relationship with Pall Medical.

1 realized the shares had value, they had every right to use their
2 exemption claims in an attempt to capture that value.
3          Finally, the court refuses to disallow the debtors' exemption
4 amendments based on the movants' other allegations of misconduct.
5 First, this alleged misconduct bears only a tangential relationship
6 to the debtors' exemption claims.  Second, the court is not
7 convinced that the debtors acted improperly.[12]

## IV. Conclusion

Based on the foregoing, the court finds that the movants have not presented clear and convincing evidence that the debtors acted in bad faith.  Accordingly, the court will overrule the Trustee's Objection.

The court will issue an order consistent with this memorandum.

Dated: OCT 22 2009

Robert S. Bardwil
United States Bankruptcy Judge

---

[12] As noted, the movants have presented no evidence that Nicholson improperly removed data from ASI's electronic systems. Also, Tyner's assertion that "the theft of funds to pay for the [KSI Financial] appraisal was theft," Reply at 4:23, is belied by her prior statement that "ASI, at the direction and under the control of Nicholson ... is undertaking an appraisal process ... intended to determine the value of [the] shares[,]" No Distribution Objection at 1:26-28. Finally, the fact that Nicholson freely admitted he retained a copy of the HemoFlow 400 source code suggests he did so under a claim of right rather than in bad faith.

**CERTIFICATE OF MAILING**

I, Andrea Lovgren, in the performance of my duties as Deputy Clerk to the Honorable Robert S. Bardwil, mailed by ordinary mail a true copy of the attached document to each of the parties listed below:

Office of the US Trustee
501 I Street, Suite 7-250
Sacramento, CA 95814

Laurence & Joyce Nicholson
13970 Red Dog Rd.
Nevada City, CA 95959

Helga White
310 Bridgeview Dr.
Auburn, CA 95603

Thomas Aceituno
P.O. Box 189
Folsom, CA 95763

DATE:    October 22, 2009

_____
Deputy Clerk